UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENEE WHITE,

      Plaintiff,

v.

AMERICAN EDUCATION
SERVICES,

      Defendant.

Case No. 2:21-cv-10349
District Judge Laurie J. Michelson
Magistrate Judge Kimberly G. Altman

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS (ECF No. 10)[1]

### I.     Introduction

This is a case regarding the collection of a student loan debt.  Plaintiff Renee White, proceeding *pro se*, filed a complaint against defendant American Education Services (AES), a student loan provider.  The complaint runs over 200 numbered paragraphs and sets forth seven enumerated claims (and at least three un-numbered claims) against AES.  *See* ECF No. 1; ECF No. 8, PageID.86.  All pretrial matters have been referred to the undersigned.  (ECF No. 5).

---

[1] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

AES has filed a motion to dismiss (ECF No. 10).  White has responded.
(ECF No. 12).  AES replied.  (ECF No. 13).  The matter is therefore ready for
review.  For the reasons set forth below, the undersigned RECOMMENDS that
AES's motion to dismiss be GRANTED and the case DISMISSED.

## II.     Background

AES is the servicer of White's student loans, which were transferred to it in
2015 and 2018.  When AES became the service provider, the loans were in
repayment status.  White's adult daughter, Sharon Renee Ricks, was the co-
guarantor/co-signed on White's student loans.

On August 23, 2019, White and Ricks filed for Chapter 7 bankruptcy.  (ECF
No. 1, PageID.4).  They were represented by an attorney, Michael Ardelean, for
the bankruptcy proceedings.  (*Id*., PageID.4, 6).  All of White's claims in this case
arise out of four communications AES sent to either White or Ricks during the
bankruptcy proceedings, which are attached as exhibits to the complaint.

The first communication is an email dated September 3, 2019, in which AES
requested that White provide her updated contact information.  (*Id*., PageID.43).
The second communication is an automated email dated September 4, 2019,
containing a link to a customer experience survey and requesting White's
feedback.  (*Id*.).  The third communication is a letter AES sent to White's daughter,
Ricks, indicating that as a result of information AES received in August 2019

2

indicating that White was deceased. (*Id.*, PageID.45). Although sent in error, this letter stated that "[w]e were recently notified of the death of RENEE D. WHITE," and informed Ricks of the next steps and her rights regarding White's account. *See id*. The fourth communication is the same letter sent one month later, when AES had not received a response to its first letter. (*Id.*, PageID.47).

According to the docket sheet for White's bankruptcy proceedings, White sent a letter to the bankruptcy court in which she raised the argument that the letters violated the automatic stay. The bankruptcy court issued a text only order stating in part if White "wishes to seek relief from this Court for one or more alleged violations of the automatic stay, she must file a motion seeking such relief." (ECF No. 10-2, PageID.183). White never filed such a motion. Her bankruptcy case was later administrated and closed as of December 6, 2019. (*Id.*)

White says that the communications indicating that she was deceased caused her anxiety, and she was later diagnosed with major depression and gastroesophageal reflux disease (GERD). (ECF No. 1, PageID.4). Before the receipt of these communications, White says that did not have any symptoms of these diseases or take any medications for them. (*Id.*, PageID.13). As a result of AES's communications, White says she suffered mental, physical, economic, and non-economic losses. (*Id.*, PageID.4). These damages included medical bills

related to White's treatment following receipt of the communications indicating that she was deceased.  (*Id*., PageID.14-16).

White also alleges that her symptoms first arose at a time when "Plaintiff's daughter was still experiencing serious illnesses," and ultimately "was hospitalized for more than ten days, with a partial admittance to the Intensive Care Unit, whereas Plaintiff remained at the hospital on a constant basis to aid in the care of Plaintiff's daughter."  (*Id*., PageID.14, ¶¶ 22, 28).  Thus, White alleges that the source of her depression and emotional distress was not the pending bankruptcy proceedings, nor her daughter's medical issues, nor the stress of serving as permanent guardian for her adult daughter.  Rather, White says her medical issues were caused from the communications from AES indicating, incorrectly, that she herself was deceased, a request for updated contact information, and an invitation to complete a customer satisfaction survey.

White also alleges that that she "is the mother and sole legal guardian to Sharon Renee Ricks a/k/a Sharon R. Ricks, an individual consumer and debtor, with a permanent disability," and proceeds to set forth multiple factual allegations that pertain to her daughter.  *See e.g., Id*., PageID.12, ¶ 2.  Each of the seven counts in the complaint similarly contain legal and factual allegations relating solely to White's daughter, apparently on behalf of both White and Ricks.  *See e.g.*, *Id*., PageID.20, ¶ 87.  "Defendant . . . remitted the same communication to Plaintiff's

daughter . . . while Plaintiff's daughter was protected by the bankruptcy court and represented by an attorney." However, as AES notes, Ricks is not a named plaintiff and White does not adequately support her assertion that she serves as Ricks's guardian and has capacity to represent her interests in litigation.

### III.    Legal Standards

AES brings this motion under both Fed. R. Civ. P. 12(b)(1) (lack of standing) and Fed. R. Civ. P. 12(b)(6) (failure to state a claim).

"A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 555, 562 (M.D. Tenn. 2020). "Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id.* "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id.*

> A factual attack challenges the factual existence of subject matter jurisdiction. In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings,

and has the power to weigh the evidence and determine the effect of
that evidence on the court's authority to hear the case.  Plaintiff bears
the burden of establishing that subject matter jurisdiction exists.

*Id.* at 759-760 (citations omitted).

When deciding a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the Court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605,

608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(concluding that a plausible claim need not contain "detailed factual allegations,"

but it must contain more than "labels and conclusions" or "a formulaic recitation of

the elements of a cause of action . . .").  Facial plausibility is established "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S.

at 678 (citation omitted).  "The plausibility of an inference depends on a host of

considerations, including common sense and the strength of competing

explanations for the defendant's conduct."  *16630 Southfield Ltd., P'Ship v.*

*Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

6

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

"Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings." *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1334 (E.D. Mich. 2011) (citing *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008)). "Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings." *Fremont Reorganizing Corp.*, 811 F. Supp. 2d at 1334 (citing *Wysocki v. Int'l Bus. Mack Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010)). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*,

593 F.3d 459, 463 n. 1 (6th Cir. 2010). Even if a document is not attached to a

complaint or answer, "when a document is referred to in the pleadings and is

integral to the claims, it may be considered without converting a motion to dismiss

into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335-336.

"Further, where the plaintiff does not refer directly to given documents in the

pleadings, if those documents govern the plaintiff's rights and are necessarily

incorporated by reference then the motion need not be converted to one for

summary judgment." *Fremont Reorganizing Corp.*, 811 F. Supp. 2d at 1334

(citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that

plan documents could be incorporated without converting the motion to one for

summary judgment even though the complaint referred only to the "plan" and not

the accompanying documents)). In addition, "a court may consider matters of

public record in deciding a motion to dismiss without converting the motion to one

for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th

Cir. 2010) (citing *Commercial Money Ctr., Inc.*, 508 F.3d at 336).

## IV.    Analysis

AES argues that each and every claim, enumerated and otherwise, either

fails for lack of subject matter jurisdiction or does not state a plausible claim for

relief.  AES also argues that the Court should decline to exercise supplemental jurisdiction over White's state law claims.  Each claim is addressed in turn below. [2]

A.    Federal Claims

1.    Count I – Violation of Automatic Stay

White's first claim is premised on the notion that AES violated the automatic stay put in place by the bankruptcy court when it communicated directly with her during the pendency of her bankruptcy proceedings.  AES argues that this count should be dismissed because White could have, and should have raised it in the bankruptcy court rather than this Court.  (ECF No. 10, PageID.115).  White says that she attempted to pursue the matter in bankruptcy court via the filing of a letter, but that the letter was ignored.  (ECF No. 12, PageID.250).

"The United States Bankruptcy Code provides a comprehensive federal system of penalties and protections to govern the orderly conduct of debtors' affairs and creditors' rights."  *Eastern Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 120 (2d Cir. 2001) (citing 11 U.S.C. § 101, *et seq.*).  "And it provides for an automatic stay of state proceedings against the debtor."  *Eastern*

---

[2] In addition to the reasons set forth below, White's federal claims under Counts II-IV and her state law claims under Counts V-VII are subject to dismissal because White failed to address them in her response. *See Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007); *Parker v. City of Highland Park*, 437 F. Supp. 3d 609, 617 (E.D. Mich. 2020).  However, the undersigned believes that the better course is to address her claims on the merits rather than on the basis of any waiver.

*Equip. & Servs. Corp.*, 236 F.3d at 120 (citing 11 U.S.C. § 362).  This case poses

the same question as the one at issue in *Eastern Equip. & Servs. Corp.*, and that

"question is whether damages may be sought under state law, in the *district* courts,

for alleged violations of the automatic stay provision of the Bankruptcy Code."

*Eastern Equip. & Servs. Corp.*, 236 F.3d at 120-121.  In *Eastern Equip. & Servs.*

*Corp.*, the Second Circuit concluded that the answer to this question was no.  *Id*.

     The Second Circuit relied on a case from the Ninth Circuit that examined the

same issue.  In the Ninth Circuit case*, MSR Exploration, Ltd. v. Meridian Oil, Inc.*,

74 F.3d 910 (9th Cir. 1996), "the Ninth Circuit determined that state tort claims

alleging violations of the automatic stay provision are completely preempted by

federal bankruptcy law."  *Eastern Equip. & Servs. Corp.*, 236 F.3d at 121.  "This

preemption arises because: (1) Congress placed bankruptcy jurisdiction exclusively

in the district courts under 28 U.S.C. § 1334(a); (2) Congress created a lengthy,

complex and detailed Bankruptcy Code to achieve uniformity; (3) the Constitution

grants Congress exclusive power over the bankruptcy law, see U.S. Const. art. I, §

8, cl. 4; (4) the Bankruptcy Code establishes several remedies designed to preclude

the misuse of the bankruptcy process; and (5) the mere threat of state tort actions

could prevent individuals from exercising their rights in bankruptcy, thereby

disrupting the bankruptcy process."  *Id*. (citing *MSR Exploration, Ltd.*, 74 F.3d at

913-916; *Koffman v. Osteoimplant Tech., Inc.*, 182 B.R. 115, 123–27 (D. Md. 1995)).

Moreover, the Sixth Circuit cited *Eastern Equip. & Servs Corp.* favorably in *Massey v. Bank of Edmondson Cnty.*, 49 Fed. App'x 604, 606 (6th Cir. 2002).  In *Massey*, the Sixth Circuit held that the district court properly ruled that it did not have jurisdiction to review the plaintiffs' claim that defendants willfully violated an automatic stay.  *Massey*, 49 Fed. App'x at 606.  Additionally, under Eastern District of Michigan Local Rule 83.50(a)(2):

> Under 28 U.S.C. § 157(b)(1), bankruptcy judges will hear and determine all cases under Title 11 and all core proceedings (including those listed in 28 U.S.C. § 157(b)(2)) arising under Title 11, or arising in or related to a case under Title 11, and will enter appropriate orders and judgments, subject to review under 28 U.S.C. § 158.

E.D. Mich. LR 83.50(a)(2).

Therefore, based on the above case law, White's claim for violation of the automatic stay must also be brought in the bankruptcy court, not this Court.  This is true even though 11 U.S.C. § 362(h) allows for the recovery of compensatory and punitive damages for willful violations of the automatic stay, such claims must be brought in the bankruptcy court as a district court has only appellate jurisdiction over bankruptcy claims.  *See Eastern Equip. & Servs. Corp.*, 236 F.3d at 121.  Thus, Count I should be dismissed for lack of subject matter jurisdiction.

11

Furthermore, even if this Court had jurisdiction to consider White's claim, it is barred by res judicata.  In the Sixth Circuit, res judicata has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action, which was litigated, or which should have been litigated in the prior action; and (4) an identity of the causes of action.  *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) (citing *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995)).

Here, White and Ricks both received final decisions on the merits in their bankruptcy cases.  White and Ricks were parties to that action and AES was identified as a creditor.  The claim, violation of the automatic stay, should have been litigated in the bankruptcy proceedings.  And contrary to White's assertion that the bankruptcy court ignored her claim, the bankruptcy court, upon receipt of her letter, directed her to file a motion.  White did not so do.  Accordingly, White is barred by res judicata for bringing a claim that she could have brought in the bankruptcy proceedings.

Overall, Count I should be dismissed.

2.    Counts II-IV – Fair Debt Collection Practice Claims

In Counts II-IV, White alleges that AES violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692, *et seq*.  Her claims generally allege that

that AES had a duty to communicate with her attorney, that AES harassed and abused her and used false information. Specifically, White says that AES had a duty to communicate with her attorney before communicating with either her or Ricks, that the transmission of the letters to Ricks constituted harassment and abuse, and that the letters were a "deceptive, misleading, and abusive communication." AES argues that these counts must be dismissed because it is not a "debt collector" as defined by the FDCPA. (ECF No. 10, PageID.119).

The FDCPA was enacted in part for the purpose of "eliminat[ing] abusive debt collection practices by debt collectors . . ." 15 U.S.C. § 1692(e). The FDCPA defines a "debt collector" as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . .

15 U.S.C. § 1692a(6). The FDCPA excludes from the definition of "debt collector," any person seeking to collect a debt where such collection efforts "concern[ ] a debt which was not in default at the time it was obtained by such person," or where the debt was "obtained by such person as a secured party in a

commercial credit transaction involving the creditor." 15 U.S.C. § 1692a(6)(F)(iii) and (iv).

The key issue here is whether AES, a loan servicer, is a creditor who is not covered by the FDCPA or a debt collector who is covered by the FDCPA. In *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012), the Sixth Circuit explained:

> [f]or an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred.

Thus, for loan servicers like AES the question focuses on whether the loan was in default when it was assigned to the servicer: "[w]here the debt was assigned for servicing before default of the loan, the assignee is exempt from the [FDCPA] because the assignee becomes a creditor and is collecting its own debt." *Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-cv-273, 2008 WL 618788, at *4 (S.D. Ohio Mar. 3, 2008) (citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996)); *see also Barksdale v. Green Tree Servicing LLC*, No. 14-cv-10403, 2014 WL 7205009, at *2-*4 (E.D. Mich. Dec. 17, 2014).

Exhibit D to AES's motion to dismiss shows that when AES became the servicer for White's student loans, they were in repayment status, i.e., they were

14

not in default.  (ECF Nos. 10-5, 10-6, 10-7).  As such, AES is not a debt collector under the FDCPA.

Finally, as AES notes, other district courts have concluded that the FDCPA does not apply to AES both in its capacity as a loan servicer and a guarantor of student loans. *See Edmond v. American Education Services*, No. 10–0578, 2010 WL 4269129, at *5 (D.D.C. 2010) (granting motion to dismiss FDCPA claim by borrower against AES) ("AES, as a loan servicer, is not a covered debt collector under the FDCPA . . ."); *Keller v. G.C. Services, et al.*, No. 13–cv–1654, 2013 WL 3213338, at *4 (E.D. Pa., June 26, 2013) ("PHEAA is not a debt collector under the FDCPA"); *Donohue v. Regional Adjustment Bureau, et al.*, No. 12–1460, 2013 WL 607853, at *4 (E.D. Pa., Feb. 19, 2013) ("I will dismiss Count I of Plaintiff's Complaint because I find that PHEAA is not a debt collector subject to the FDCPA.").

In sum, AES is not a debt collector as defined by the FDCPA, and White's Counts II-IV, which assert claims against AES under the FDCPA, should be dismissed.

### B.    Counts V-VII – State Law Claims

#### 1.    Supplemental Jurisdiction

Counts V-VII all state claims under Michigan law.  Count V alleges a violation of the Michigan Regulation Collection Practices Act (MRCPA), Count

VI alleges defamation of character, and Count VII alleges intentional infliction of emotional distress (IIED). AES first argues that the Court should decline to exercise jurisdiction over these claims under 28 U.S.C. § 1367. (ECF No. 10, PageID.123).

"[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Federal courts should only exercise supplemental jurisdiction "in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [ ] concern over needlessly deciding state law issues." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). "When all federal law claims are eliminated before trial, the balance of factors to be considered under pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Id*. (internal citations omitted).

Here, although the case is still at the earliest stages, the undersigned recommends exercising supplemental jurisdiction over the state law claims. Despite arguing that the Court should decline to consider White's state law claims, AES has spent a good deal of time addressing the substantive merits of each of the state law claims. Both convenience and judicial economy will be served by considering all of White's claims rather than directing her to refile them in state

16

court.  This is particularly true because, as will be explained, White's state law claims fail on the merits.  Each state law claim is considered in turn below.

### 2.     State Law Claims

### a.     Count V – MRCPA

Count V alleges a claim under the MRCPA, MCL § 445.251, *et seq*.  AES argues that this claim must be dismissed because it did not violate MCL § 445.252(h).  (ECF No. 10, PageID.124-125).

The MRCPA prohibits a number of enumerated acts, including communicating with a debtor directly when a "regulated person" knows that debtor to be represented by counsel.  *See* MCL § 445.252(h).  MCL § 445.252(h) prohibits a "regulated person" from:

> Communicating with a debtor, except through billing procedure when the debtor is actively represented by an attorney, the attorney's name and address are known, *and the attorney has been contacted in writing by the credit grantor or the credit grantor's representative or agent*, unless the attorney representing the debtor fails to answer written communication or fails to discuss the claim on its merits within 30 days after receipt of the written communication.

M.C.L. § 445.252(h) (emphasis added).

As AES correctly notes, even if it knew White's attorney's information when it sent the communications at issue to White, she has failed to establish a violation of M.C.L. § 445.252(h).  Indeed, White admits in her complaint that her attorney was never "contacted in writing by the credit grantor or the credit

grantor's representative or agent" as required under M.C.L. § 445.252(h). *See* ECF No. 1, PageID.18, ¶ 63-64.

Moreover, like her claims under the FDCPA, White has not sufficiently established that AES is a "regulated person" within the meaning of the MRCPA. *See Lovelace v. Stephens & Michaels Assocs.*, No. 07-10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007) (attached as Exhibit H) (finding that plaintiff's MCPA claims "simply duplicate his claims under the FDCPA and need not be addressed separately").

Overall, White has not stated a plausible claim for relief under the MRCPA.

b.     Count VI – Defamation

Count VI alleges "defamation of character" and cites 28 U.S.C. § 4101. AES argues that 28 U.S.C. § 4101,[3] pertains to the recognition of foreign judgments for defamation in United States courts which does not apply. The undersigned agrees. Any claim based on section 4101 fails to state a claim.

AES further argues that even assuming White intended to state a claim for defamation under Michigan law, the claim fails to state a plausible claim for relief. AES also argues that the statute of limitations bars White's claim.

---

[3] 28 U.S.C. § 4101 is the definitions page for the statute concerning recognition of foreign defamation judgments.

18

White argues that the statements that she was deceased were false and, therefore, amount to defamation of character and that she sent a letter to bankruptcy court regarding the statements within the statute of limitations.

Construing the complaint in the light most favorable to White, she is attempting to state a claim for defamation under Michigan law. "Under Michigan law, the elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Gilliam v. Ordiway*, 147 F. Supp. 3d 664, 668 (E.D. Mich. 2015). And under M.C.L. § 600.5805(11), there is a one-year statute of limitations for defamation claims, starting from the date that the alleged defamatory statement was made.

Here, even assuming the statements that White was deceased were defamatory, White's claim is time-barred. The communications containing the statements were dated September 10, 2019, and October 2, 2019. The complaint was not filed until February 4, 2021. Accordingly, White's complaint was filed outside of the one-year statute of limitations for defamation claims is subject to dismissal. This is true notwithstanding the discovery rule, which White argues salvages her defamation claim. The discovery rule preserves a plaintiff's right to

19

bring suit where the statute of limitations would require them to anticipate facts which were "unknown and inherently unknowable," or where the plaintiff's harm arises only later. *Urie v. Thompson*, 337 U.S. 163, 169 (1949). White knew the relevant facts at the time of she received the alleged defamatory letters during her bankruptcy proceedings. Her harm arose at that time and not any later. Thus, the discovery rule does not save White's claims from dismissal.

### c.    Count VII – IIED

Count VII alleges IIED based on AES's alleged violations of the automatic stay, the FDCPA, and the MRCPA. AES argues that White's allegations do not rise to the level to support an IIED claim. (ECF No. 10, PageID.129-130). The undersigned agrees with AES.

"Under Michigan law, the elements of intentional infliction of emotional distress ("IIED") are: (1) that the defendant engaged in extreme and outrageous conduct; (2) that the defendant intended to cause the plaintiff severe emotional distress or was reckless with regard to whether the plaintiff would suffer such distress; (3) that the defendant's actions actually caused emotional distress; and (4) that the emotional distress was severe." *Gilliam*, 147 F. Supp. 3d at 669. "Sufficient proof must be adduced of intentional infliction and something much more than simply aggravation must be shown to make out a case of emotional distress." *Bhama v. Bhama*, 169 Mich. App. 73, 425 N.W.2d 733, 736 (1988).

This requires plaintiff to show more than "hurt feelings," but "seeking and receiving medical treatment" is not "a condition precedent to satisfying the element of extreme emotional distress." *McCahill v. Commercial Union Ins. Co.*, 179 Mich. App. 761, 446 N.W.2d 579, 584 (1989).

Here, White cannot establish an IIED claim. As explained above, White's claims against AES for violations of the automatic stay, the FDCPA, and the MRCPA are all subject to dismissal. Further, none of AES's alleged conduct was extreme and outrageous. AES simply sent four communications to White and/or Ricks. None of which contained extreme or outrageous statements. Two were of a routine nature and two mistakenly indicated that White was deceased, which White herself could easily realize were sent in error. The statements contained in these communications cannot be " 'regarded as atrocious and utterly intolerable in a civilized community,' such that lead the average member of the community to exclaim, 'Outrageous!' " *Williams v. AK Steel Corp.*, No. 18-11485, 2020 WL 2836287, at *13 (E.D. Mich. May 31, 2020). Thus, White's claim for IIED should be dismissed.

### d.     Un-numbered Claims

White's remaining claims are all un-numbered. They attempt to state claims for "Intent," "Adverse Effects," and "Personal Injury." AES argues that "intent" and "adverse effects" are not torts recognized under Michigan law and that the

21

"personal injury" claim does not sufficiently advise AES of the nature of the claim asserted. (ECF No. 10, PageID.131-132). The undersigned agrees.

Simply put, there is no cause of action available for intent or adverse effects. And the Court will not create a new state tort claim for "intent" or "adverse effects." *See Buckner v. Gilliland*, 846 F. Supp. 2d 799, 805 (N.D. Ohio 2012) (dismissing claim for relief and declining to adopt unrecognized tort of negligent investigation).

White's claim for personal injury appears to refer to AES's duties as her loan servicer. It is not clear what exactly White is alleging. A properly pleaded complaint requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. White's claim for personal injury does not meet this standard. Accordingly, White's claims for intent, adverse effects, and personal injury are all subject to dismissal.

## C. White's Response

White's response raises an additional issue. She appears to be treating her response as both a response and a motion. For example, she requests that this Court "[g]rant Plaintiff's Motion to Proceed (to give Plaintiff a due right to process to a trial by jury)" and "[g]rant Plaintiff's inclusive Motion to Withdrawal of Original Complaint and Demand for Jury Trial Without Prejudice for Plaintiff to Redress Same Matter in the United States Bankruptcy Court," or that the Court

22

"[g]rant Plaintiff full relief of all damages Plaintiff has endured and incurred due to Defendant's violations of the automatic stay."   (ECF No. 12, PageID.255, ¶¶ 2-4). As AES notes, White has not filed any motions requesting this relief, nor has she provided legal authority entitling her to such relief.

Federal Rule of Civil Procedure 7(b)(1) requires that all requests for a court order be made via motion.  It has long been the case that "[w]hat plaintiff[ ] may have stated, almost as an aside to the district court in a memorandum in opposition to the defendant's motion to dismiss is also not a motion . . ." *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000).  Accordingly, White's response will not be treated as a motion nor will the undersigned consider granting her requested relief.

## V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that AES's motion to dismiss be GRANTED and the case DISMISSED.


Dated: December 20, 2021              s/Kimberly G. Altman
Detroit, Michigan                     KIMBERLY G. ALTMAN
                                      United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

23

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.   If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 22, 2021.

24

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager